UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RAYDARO VASHAWN PAULK, SR.,

           Plaintiff,

      v.

MICHAEL P. KEARNS, *Erie County Clerk*, *et al.*,

           Defendants.

_____

                                 21-CV-622-LJV
                                 DECISION & ORDER

       The *pro se* plaintiff, Raydaro Vashawn Paulk, Sr., commenced this action under 42 U.S.C. § 1983, alleging that the defendants violated his Second Amendment rights. Docket Items 1 (complaint) and 4 (amended complaint).  Paulk brings his claims against Erie County Pistol Permit; Michael P. Kearns, the Erie County Clerk; and the Honorable M. William Boller, Acting Justice, New York State Supreme Court, Erie County.  Docket Item 4.

       On July 15, 2021, Erie County Pistol Permit and Kearns (collectively, the "County defendants") moved to dismiss, Docket Item 7, and about a month later, Justice Boller did the same, Docket Item 9.  Paulk did not respond to those motions, so on December 9, 2022, this Court ordered him to "show cause why this Court should not decide those motions based only on the defendants' papers."  Docket Item 12 (bold emphasis omitted).  About a week later, Paulk responded to the Court's order to show cause,

opposed the motions to dismiss, and provided reasons why his opposition was not timely filed.[1]  Docket Item 13.

For the following reasons, the defendants' motions to dismiss are granted in part, and the remainder of the motions will be granted unless Paulk amends his complaint to correct the deficiencies noted below.

## FACTUAL BACKGROUND[2]

Paulk has sued Kearns, Erie County Pistol Permit, and Justice Boller for their roles in denying Paulk's application for a firearms license.  Docket Item 4 at 4.  Justice Boller denied that application because Paulk "failed to disclose certain background information regarding a prior criminal history."[3]  Docket Item 7-2 at 2.  Specifically, Paulk failed to disclose an arrest.  *See* Docket Item 4 at 4.

---

[1] Paulk also filed two "motion[s] for an extension of time to file a notice of appeal."  *See* Docket Items 14 and 15.  Despite their titles, both filings appear to be responses to the Court's show cause order, and the Court therefore construes them as such.  In fact, the December 20, 2021 filing, Docket Item 15, includes an identical copy of Paulk's opposition to the motion to dismiss.  *Compare* Docket Item 15 at 2-5, *with* Docket Item 13 at 1-4.  The Court grants Paulk's motions to submit a late response and considers his response in this decision.

[2] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

[3] In deciding a motion to dismiss, the Court may consider any written documents that are attached to a complaint, incorporated by reference, or integral to it. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  The amended complaint refers to Justice Boller's order denying Paulk's firearms license, and the grounds for denial are central to Paulk's Second Amendment claim.  Moreover, although not attached to the amended complaint, Justice Boller's order and Kearns's letter advising Paulk about the denial of his application were attached to the complaint.  Docket Item 1 at 8-9.  The Court therefore considers Justice Boller's order and Kearns's letter, Docket Item 7-2 at 2-3, on the present motions to dismiss.

But Paulk did not omit that information intentionally; in preparing his application, he relied on a background check that he obtained from the police station in downtown Buffalo. *Id.* at 4-5. The arrest did not appear on his background check because the arrest had not been recorded with Paulk's correct date of birth. *Id.* Therefore, Paulk says, the mistake was not his, and his application should not have been denied. *See id.*

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.    CLAIMS AGAINST JUSTICE BOLLER

Paulk does not specify whether he is suing Justice Boller in his official capacity, individual capacity, or both. Docket Item 4 at 1. The Court assumes that Paulk brings his claims against Justice Boller in both his individual capacity and his official capacity. But for the reasons that follow, most of those claims are barred by judicial or sovereign immunity, and the remaining claims against Justice Boller fail to state a claim for which relief may be granted.

3

### A.    Individual-Capacity Claims and Judicial Immunity

Justice Boller argues that the individual-capacity claims against him must be dismissed because he is immune from suit.  Docket Item 9-1 at 3-7.  This Court agrees.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  Judicial immunity is not simply immunity from damages, however; it is immunity from suit altogether.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (internal citations omitted).  This is to ensure "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."  *Bradley v. Fisher*, 80 U.S. 335, 347 (1871).  Judicial immunity therefore does not give way even to allegations of bad faith or malice.  *Mireles*, 502 U.S. at 11.

Judicial "immunity is overcome in only two sets of circumstances."  *Id*.  "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity."  *Id*.  "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Id*. at 12.

In determining whether a judge's actions are "judicial," the Second Circuit has taken a "functional approach."  *Bliven*, 579 F.3d at 209.  The relevant factors include the nature of the judge's action, whether the action is ordinarily performed by a judge, whether the parties expect the judge to take such action, and whether the parties dealt with the judge in his judicial capacity.  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  "The fact that a proceeding is 'informal and *ex parte* . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character.'"  *Bliven*, 579 F.3d at 210 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).  "The Second Circuit has noted that '[t]he principal hallmark of the judicial

4

function is a decision in relation to a particular case.'" *Aron v. Becker*, 48 F. Supp. 3d 347, 365 (N.D.N.Y. 2014) (quoting *Bliven*, 579 F.3d at 211).

In fact, the Second Circuit has already addressed judicial immunity in the context of decisions denying an application for a firearm license.  In *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 124-25 (2d Cir. 2020), the court found that two judges were immune from a suit that was grounded in their rulings on applications for New York State firearms licenses.  As in this case, the plaintiffs' applications in *Libertarian Party of Erie County* "were ruled on by the judge who was the licensing officer for the applicant's county of residence."  *Id.* at 124.  And in upholding the application of judicial immunity, the court emphasized how the judge's rulings "directly addressed the specific applications, referred to relevant requirements of [New York Penal Law] § 400.00, [] decided the merits of the applicants' requests," and bore the signature of the presiding judge.  *Id*.

Paulk's claims against Justice Boller present factual circumstances nearly identical to those in *Libertarian Party of Erie County*.  Justice Boller was the licensing officer for Paulk's county of residence, and he ruled on Paulk's application.  *See* Docket Item 7-2 at 2.  And like the judges in *Libertarian Party of Erie County*, Justice Boller "caused to be entered a signed order of the 'State of New York, Supreme Court: County of Erie.'"  *Compare Libertarian Party of Erie Cnty.*, 970 F.3d at 124 *with* Docket Item 7-2 at 2.

Moreover, like the judges in *Libertarian Party of Erie County,* Justice Boller directly addressed the application for a firearms license, referred to relevant requirements of the law, and decided the merits of the request.  *Compare* Docket Item

7-2 at 2 *with Libertarian Party of Erie Cnty.*, 970 F.3d at 124.  More specifically, Justice

Boller found that Paulk "failed to disclose certain background information regarding a

prior criminal history" and that the statements in Paulk's application were not true—

violating both the law, *see* N.Y. Penal Law § 400.00(1), and the requirements of the

application, Docket Item 7-2 at 2.  Justice Boller's ruling on the firearms license

application therefore was a judicial decision, and he is entitled to absolute immunity for

the claims asserted against him in his individual capacity.  Accordingly, the claims

against Justice Boller in his individual capacity are dismissed.

### B.    Official-Capacity Claims

#### 1.    Claim for Damages and Sovereign Immunity

Justice Boller argues that the damages claim against him in his official capacity

must be dismissed because he is entitled to a different type of immunity—sovereign

immunity—on that claim.  Docket Item 9-1 at 3.  Again, this Court agrees.

"The Eleventh Amendment precludes suits against states unless the state

expressly waives its immunity or Congress abrogates that immunity."  *Li v. Lorenzo*, 712

F. App'x 21, 22 (2d Cir. 2017) (summary order) (citing *CSX Transp., Inc. v. N.Y. State

Off. of Real Prop. Servs.*, 306 F.3d 87, 94-95 (2d Cir. 2002)).  Under section 1983, a

claim for money damages against a state official in his or her official capacity "is in

effect a claim against the governmental entity itself."  *Lore v. City of Syracuse*, 670 F.3d

127, 164 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691

(1978)).  Because "New York has not waived its immunity, nor has Congress abrogated

it," *Li*, 712 F. App'x at 22 (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d

35, 38-40 (2d Cir. 1977); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)),

the Eleventh Amendment bars official-capacity suits for money damages against New York State and its officials in their official capacity, *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

For the reasons just stated, to the extent that Paulk sues Justice Boller for money damages in his official capacity, that claim is barred by the Eleventh Amendment and is dismissed.

### 2.      Claim for Injunctive Relief

Paulk also seeks injunctive relief against Justice Boller: compelling the issuance of the firearm license.  *See* Docket Item 4.  He alleges that his Second Amendment rights have been violated and appears to challenge the process that led to the denial of his license.  *Id.*

#### a.      Second Amendment Claim

Paulk alleges that New York Penal Law Section 400.00 violates his right to keep and bear arms under the Second Amendment.  *Id*.  And he directs the Court to a Second Amendment case pending before the United States Supreme Court, *New York State Rifle & Pistol Association Inc. v. Corlett*, 141 S. Ct. 2566 (2021) (granting certiorari in part), asserting that it is similar to the claim he presses here.  Docket Item 4 at 5; Docket Item 13 at 3-4.

A brief overview of the New York licensing process for firearms is necessary to address Paulk's argument.  New York Penal Law Section 400.00 "is the exclusive statutory mechanism for the licensing of firearms in New York State."  *Kachalsky v. County of Westchester*, 701 F.3d 81, 85–86 (2d Cir. 2012).  To obtain a firearms license under section 400.00, applicants must meet several requirements, including being

7

twenty-one years of age or older, having "good moral character," and having no criminal history or history of mental illness. *Id.* at 86 (citing N.Y. Penal Law § 400.00(1)(a)-(d)). There also must be "no good cause . . . for the denial of the license." N.Y. Penal Law § 400.00(1)(n).

Furthermore, if an applicant seeks a license to carry a concealed weapon "without regard to [the applicant's] employment or [the] place of possession," the applicant must demonstrate that "proper cause exists for the issuance thereof." *Id.* § 400.00(2)(f). And in all cases, section 400.00 expressly prohibits a licensing officer from issuing a license unless there has been an "investigation and finding that all statements in a proper application for a license are true." *Id.* § 400.00(1). Justice Boller denied Paulk's application based on the final ground—that is, Paulk's failure to fully disclose his criminal history and to submit a truthful application. *See* Docket Item 7-2 at 2.

Paulk cites *New York State Rifle & Pistol Association, Inc. v. Beach*, 354 F. Supp. 3d 143, 146-47 (N.D.N.Y. 2018), *aff'd*, 818 F. App'x 99 (2d Cir. 2020), in support of his claim here. In that case, the applications for licenses were denied because the applicants did not demonstrate the required "proper cause" to obtain a license to carry a concealed weapon, and the applicants challenged the constitutionality of the broad "proper cause" provision. *Id.* Here, on the other hand, Paulk's application was denied because he violated a very specific provision of the law. So to the extent Paulk asserts that his claim is the same as the plaintiffs' claims in *New York State Rifle & Pistol Association*, he misses the mark.[4]

---

[4] Even assuming that Paulk was challenging the "proper cause" requirement as violating the Second Amendment and that he had standing to do so, his argument still would fail. The Second Circuit repeatedly has held that "New York's proper cause

Moreover, to the extent Paulk argues that New York's requirement that an application for a firearms license be truthful and fully disclose criminal history violates the Second Amendment, he fails to state a viable claim.  The Second Amendment provides that "[a] well[-]regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In the Second Circuit, courts undertake a two-step inquiry to determine the constitutionality of firearm restrictions:

> [f]irst, [courts] consider whether the restriction burdens conduct protected by the Second Amendment.  If the challenged restriction does not implicate conduct within the scope of the Second Amendment, [the] analysis ends and the legislation stands.  Otherwise, [courts] move to the second step of [the] inquiry, in which [courts] must determine and apply the appropriate level of scrutiny.

*N.Y. State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015) ("*NYSRPA*").  The Second Circuit has "interpreted the core Second Amendment right identified in [*District of Columbia v. Heller*, 554 U.S. 570, (2008)] to be the right of *law-abiding, responsible citizens*, to use handguns . . . for self-defense in the home." *Libertarian Party of Erie Cnty.*, 970 F.3d at 127 (emphasis in original) (internal citations and quotation marks omitted).  "The Supreme Court . . . identified the core . . . protections by reference not only to particular uses and particular weapons but also to

---

requirement does not violate the Second Amendment."  *N.Y. State Rifle & Pistol Ass'n, Inc. v. Beach*, 818 F. App'x 99, 100 (2d Cir. 2020) (citing *Kachalsky*, 701 F.3d at 83, 100-01 and *Libertarian Party of Erie Cnty.*, 970 F.3d at 126-27).  And until the Supreme Court or Second Circuit says otherwise, this Court is bound by that precedent. *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003).

particular persons, namely, those who are law-abiding and responsible." *Id.* (citation omitted).

"New York's at-home license regime, while affecting the core Second Amendment right, imposes nowhere near the burden that was at issue in *Heller*." *Id.* Unlike the restriction in *Heller*, New York law does not ban possession of firearms in the home. *See id.* Rather, it asks for diligence and honesty in the application process. As explained above, it permits licenses for those who show "good moral character," demonstrate that "good cause" does not exist for denying a license, and submit a truthful application. N.Y. Penal Law § 400.00(1), 400.00(1)(b), 400.00(1)(n). In other words, the "the statute does not burden the ability of '*law-abiding, responsible* citizens to use arms in defense of hearth and home,'" *Libertarian Party of Erie Cnty.*, 970 F.3d at 127 (emphasis in original) (quoting *Heller*, 554 U.S. at 635), and "the conditions placed on the core Second Amendment right are not onerous," *id.* at 127-28.

Nevertheless, New York's license regime does affect the core Second Amendment right, and so the Court must determine and apply the correct level of scrutiny. Laws placing "substantial burdens on core rights are examined using strict scrutiny"; those placing "insubstantial burdens on conduct at the core of the Second Amendment or substantial burdens [only] on conduct outside the core . . . can be examined using intermediate scrutiny." *United States v. Jimenez*, 895 F.3d 228, 234 (2d Cir. 2018) (citations omitted). Although New York's licensing regime affects the core Second Amendment right, it does not do so in a way that is onerous. And because the license regime's burden is modest, intermediate scrutiny is appropriate here.

Firearm licensing laws satisfy intermediate scrutiny if the laws are "substantially related to the achievement of an important governmental interest."  *NYSRPA*, 804 F.3d at 261.  Because "[i]t is beyond cavil that . . . states have substantial, indeed compelling, governmental interests in public safety and crime prevention," courts need only consider "whether the challenged laws are substantially related to the achievement of that governmental interest."  *Id.* (internal quotation marks omitted).

New York's requirement that an applicant be truthful on his application and fully disclose his criminal history more than meets this standard.  As Justice Boller noted in his decision, "[t]he purpose for the application and all of the forms filed therewith are critical to maintaining accurate and proper documentation."  Docket Item 7-2 at 2. "Moreover, the laws 'promote[] public safety and prevent gun violence' by ensuring that classes of individuals who do not have the necessary character and qualities to possess firearms are not able to do so."  *Libertarian Party of Erie Cnty. v. Cuomo*, 300 F. Supp. 3d 424, 444 (W.D.N.Y. 2018) (quoting *Kwong v. Bloomberg*, 723 F.3d 160, 168 (2d Cir. 2013)).  Indeed, having an accurate, truthful, and complete criminal history is critical to New York's ability to evaluate license applications and bears a close relationship to New York's compelling interests in public safety and crime prevention.

Justice Boller denied Paulk's license application because Paulk did not fully disclose his criminal history.  Although Paulk argues that this was not his fault and that the blame rests with the police department, he does not dispute that he had previously been arrested and that he did not report that arrest in his application.  So while Paulk

may want to challenge the reason for his denial[5] or the process that led to it, he has not stated a viable Second Amendment claim.

For all those reasons, New York's requirement that an application be truthful satisfies intermediate scrutiny, and Paulk has not stated a viable Second Amendment claim.

> b.   *Due Process Claim*

Paulk also appears to raise a due process claim regarding the denial of his license. That claim fails, however, because Paulk had adequate process available to him by way of an Article 78 proceeding:

> An aggrieved pistol permit applicant has well-established appellate recourse under [New York Civil Practice Law and Rules ('CPLR')] Article 78. Under CPLR § 7804(e), a respondent judge or justice is required to file a certified copy of the record underlying the determination on the application, with a copy to the petitioner. Since such a proceeding seeks review of a determination by a justice of the [New York] supreme court or a judge of a county court, under CPLR 506(b)(1)[,] it must be brought in the Appellate Division. A licensing officer's decision will not be disturbed unless it is arbitrary and capricious.

*Aron*, 48 F. Supp. 3d at 370-71 (internal citations omitted). And where an applicant is "entitled to challenge the denial of his firearms license application in an Article 78 proceeding, [he] had available to [him] a meaningful post-deprivation remedy under

---

[5] To the extent that Paulk challenges the reason for his denial, he is in the wrong court. *See* Docket Item 3 at 3-4. As this Court explained in its previous screening order, "[t]o the extent that Paulk alleges the defendants violated New York law in denying him a firearm license, or denied him a license based on an error in the New York court system, . . . state law claims are not cognizable under [section] 1983." *Id.* at 4. Stated another way, this Court cannot "overturn" Justice Boller's denial. *Id.* "[F]ederal courts are not courts of appeal for litigants unhappy with a state court decision," and "the *Rooker-Feldman* doctrine precludes federal court jurisdiction over such matters." *Id.* Moreover, applicants, like Paulk, have "well-established appellate recourse under [New York Civil Practice Law and Rules ('CPLR')] Article 78." *Id.* (quoting *Aron*, 48 F. Supp. 3d at 370).

state law." *Id.* at 375 (quoting *Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 89 (N.D.N.Y. 2011)).

Paulk did not bring an Article 78 proceeding challenging the denial of his license. And he may not "reject the opportunity to meaningful due process review and then come to this court seeking [relief] for what [he] asserts is a due process violation." *Id.* at 375-76.  For that reason, to the extent Paulk raises a due process claim, he has failed to state a viable claim.

## II.   CLAIMS AGAINST THE COUNTY DEFENDANTS

Paulk also brings his claims against the County defendants—that is, Kearns[6] and Erie County Pistol Permit.  *See* Docket Item 4.  Like Justice Boller, the County defendants argue that Paulk fails to state a viable claim under the Second Amendment. Docket Item 7-3 at 5-8.  But they also argue that Paulk's claims against them fail because Paulk does not allege a plausible basis for Kearns's or Erie County Pistol Permit's liability.  *Id.* at 4-5, 8-12.

For the reasons just explained, *see supra* at 7-12, this Court agrees that Paulk has failed to state a viable Second Amendment claim against the County defendants. In addition, this Court agrees with the County defendants that Paulk's claims against them fail because Paulk does not allege a plausible basis for their liability.

---

[6] Paulk does not specify whether he is suing Kearns in Kearns's individual capacity, official capacity, or both.  *See* Docket Item 4 at 1-2.  As it did with respect to Justice Boller, this Court assumes that Paulk intends to sue Kearns in both Kearns's individual and official capacities.

### A. Individual-Capacity Claims Against Kearns

Paulk asserts his claims against Kearns under 42 U.S.C. § 1983.  *See* Docket Item 4.  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Ashcroft*, 556 U.S. at 676).  Moreover, the theory of *respondeat superior* is not available in a section 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  Instead, "[t]he violation must be established against the supervisory official directly."  *Tangreti*, 983 F.3d at 618.

Kearns argues that even if a Second Amendment violation occurred, the amended complaint contains no factual allegations indicating that Kearns was personally involved in denying Paulk's firearms license.  Docket Item 7-3 at 8-10.  This Court agrees.

From the amended complaint, Docket Item 4, Justice Boller's decision, Docket Item 7-2 at 2, and Kearns's letter, *id.* at 3, it appears that Kearns's involvement in the firearms license was limited to notifying Paulk that his application was denied and

14

mailing him a copy of Justice Boller's order.  Indeed, the letter signed by Kearns notes that the "[l]icense has been *denied by the Honorable M. William Boller*" and that "[e]nclosed is the order specifying *his* reason(s) for *his decision*."  *Id.* at 7-2 at 3 (emphasis added).  In other words, Kearns was not involved in the decision.  And that makes sense because under New York's license regime, a "judge or justice of a court of record having his office" in Erie County, not the Erie County Clerk, is the licensing officer authorized to evaluate firearms licenses in Erie County.[7]  *See* N.Y. Penal Law §§ 265.00(10), 400.00.

Moreover, and more important, the amended complaint includes no factual allegations suggesting otherwise.  Paulk alleges that the downtown Buffalo police station provided an erroneous background check, that he relied on that background check to prepare his application, and that Justice Boller denied his application for an invalid reason.  *See* Docket Item 4 at 4.  But Paulk does not allege that Kearns had anything to do with that erroneous background check or Justice Boller's decision.

In sum, Paulk has not plausibly alleged that Kearns was personally involved in denying Paulk's firearms license and any related constitutional violation.  Accordingly, he fails to state a viable claim against Kearns in his individual capacity.

### B. Official-Capacity Claims Against Kearns

As previously noted in this Court's analysis of the official-capacity claims against Justice Boller, *see supra* at 6, a section 1983 claim against an individual in his official

---

[7] Section 400.00(3)(a) of the New York Penal Law requires that license applications be made to a "licensing officer."  Under section 265.00(10), the licensing officer for Erie County is "a judge or justice of a court of record having his office in" Erie County.

capacity "is in effect a claim against the governmental entity itself." *See Lore*, 670 F.3d at 164 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 691 n.55).  A municipality, and its officials sued in their official capacities, cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom.  *See Monell*, 436 U.S. at 694.  To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)).  "[A] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," such as "the persistent failure to discipline subordinates who violate [persons'] civil rights."  *Id.* (alteration in original) (second excerpt quoting *Batista*, 702 F.2d at 397).

Paulk does not allege that Erie County had any policy related to the denial of a firearm license.  Nor does he point to any Erie County policy that led to the denial of his license application.[8]  And for that reason, Paulk fails to state a plausible claim against Kearns in his official capacity.

---

[8] Although he alleges an error by the police station in maintaining record of his arrest—an error that Paulk relied on in preparing his application—*see* Docket Item 4 at 4, a single example "is insufficient to allege a practice so widespread and persistent as to amount to a policy or custom of [the municipality]," *see Pryor v. City of New York*, 2018 WL 4538904, at *4 (S.D.N.Y. Sept. 21, 2018); *see also Scott v. City of Rochester*, 2018 WL 4681626, at *6 (W.D.N.Y. Sept. 28, 2018) ("[A] single example of a police officer['s] fabricating charges to hide an excessive use of force coupled with the allegations here simply cannot establish a 'persistent and widespread' custom that carries the force of law.").  What is more, Paulk alleges that the error was made by the City of Buffalo Police Department, not by Kearns or the County.  *See* Docket Item 4 at 4.  In any event, Paulk's single example by a city police department does not give rise to an inference of a policy, widespread practice, or informal custom of Erie County that caused the alleged constitutional violation.

16

### C. Claims Against Erie County Pistol Permit

Paulk's allegations against Erie County Pistol Permit also fail to state a viable claim.  "Federal courts must look to state law to determine whether a government department may be sued."  *Hoisington v. County of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (citing Fed. R. Civ. P. 17(b)).  "Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence."  *Id.*  In other words, municipal departments, like the Erie County Pistol Permit Office, cannot be sued.  *See id.*  And "where both the municipality and the municipal department have been named as defendants, courts routinely have dismissed the claims against the department."  *In re Dayton*, 786 F. Supp. 2d 809, 818–19 (S.D.N.Y. 2011) (collecting cases).

As explained above, Paulk's claim against Kearns in his official capacity is tantamount to a suit against Erie County itself.  Because Paulk has in effect sued both the municipality and the municipal department—that is, Erie County and its Pistol Permit Office—Paulk's claim against Erie County Pistol Permit is dismissed.

### III.   LEAVE TO AMEND

Paulk does not request leave to amend.  Nevertheless, because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), Paulk may file an amended complaint, within 45 days, that addresses the deficiencies noted above.  Leave to amend any claims for damages against Justice Boller in his individual or official capacity is denied, however, because Justice Boller is immune from suit on those claims, and leave to amend those claims therefore would be futile.  *See McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Likewise, leave to amend any claim against Erie County Pistol Permit is denied because it is not subject to suit for the reasons stated above and any amendment would be futile for that reason.

## CONCLUSION

For all the above reasons, the defendants' motions to dismiss, Docket Items 7 and 9, are GRANTED in part.  Paulk's claims for damages against Justice Boller in his individual and official capacities and his claim against Erie County Pistol Permit are dismissed.  Paulk's other claims will be dismissed unless, within 45 days, he amends his complaint to correct the deficiencies noted above.  No later than 30 days after any second amended complaint is filed, the defendants may answer, move against, or otherwise respond to the second amended complaint.  If Paulk does not amend his complaint within 45 days of the date of this order, then his amended complaint will be dismissed without further order and the Clerk of the Court shall close the case.


SO ORDERED.

Dated:   March 30, 2022
         Buffalo, New York


                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE